BALFE et al. v. TILTON.

(District Court, D. New Hampshire. August 16, 1912.)

No. 373, Equity.

**1. EXECUTORS AND ADMINISTRATORS (§§ 473, 474*)—SUIT TO SET ASIDE SETTLE-MENT MADE OUT OF COURT—EFFECT OF RELEASE.**

In a suit by the widow and sole heir of a decedent against the executrix of his brother and partner, who was also executor of his alleged will and settled his estate, for an accounting and to set aside releases by which complainant released to him her interest in the estate for a consideration alleged to be wholly inadequate, complainant is not entitled to such accounting, involving large expense and an examination of the books of the partnership and of defendant's testator, until the question of the validity of the releases has been fully determined.

[Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 2041–2060; Dec. Dig. §§ 473, 474.*]

**2. EQUITY (§ 401*)—RELEASE BY HEIR—CONSIDERATION.**

But when the validity of releases under fiduciary relations is in question, and where an allegation of wholly inadequate consideration is not aptly denied, a master may, in the discretion of the court, be appointed to ascertain whether the consideration was approximately, measurably, or reasonably commensurate with the actual interests sought to be released.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 869–873; Dec. Dig. § 401.*]

**3. DESCENT AND DISTRIBUTION (§ 72*)—RELEASE BY HEIRS—VALIDITY.**

The fact of palpable disproportion between the consideration and the actual interests would have a material bearing upon the question of the invalidity of the releases from the one party to the other under fiduciary relations, and the fact of proper and reasonable proportion would be significant in support of the alleged validity.

[Ed. Note.—For other cases, see Descent and Distribution, Cent. Dig. §§ 221, 222; Dec. Dig. § 72.*]

In Equity. Suit by Louise E. Tilton and Mary A. Balfe, administratrix of the estate of Myra Tilton, deceased, against Genieve E. Tilton, individually and as executrix of the will of Charles E. Tilton, deceased. On application by complainants for discovery and accounting. Denied pending hearing on other issues.

Artemas H. Holmes, of New York City, and Niles & Upton, of Concord, N. H., for complainants.

Foster & Lake, of Concord, N. H., and E. G. Eastman, of Exeter, N. H., for defendant.

ALDRICH, District Judge. This is a bill in equity which in effect is one for discovery and an accounting and for substantial affirmative relief in respect to property interests.

The bill is by Louise Tilton, widow of Alfred E. Tilton, and Mary A. Balfe, administratrix of Myra, the daughter of Alfred and Louise.

Alfred E. Tilton and Charles E. Tilton were brothers, and were in partnership in various large enterprises in different states, and Alfred

had large business enterprises of his own according to the allegations of the bill.

Alfred died some years before Charles, leaving a widow, Louise, and a daughter, Myra.

Under what purported to be the will of Alfred, in which Charles was named as executor, Charles undertook the settlement of Alfred's estate in various states. During quite a period he furnished the widow of Alfred $200 a month and the daughter Myra $100 a month for their support, and after several years and while things were going on in this way, and after the daughter of Alfred had died, he procured from the widow of Alfred releases covering the interests of herself and the daughter in the estate of Alfred. These releases, as it is understood, were secured out of court, and were the result of negotiations between the executor and others representing him and the widow, Louise, and, if they stand, doubtless operate to extinguish the interests of Louise and her daughter, Myra, in the estate of Alfred. The allegations of the bill are very sweeping, and in effect charge that the purported will of Alfred was a forgery by Charles; that Alfred's interests were large, and that, while not particularly apt in that respect, they in effect charge that Alfred had very large partnership interests, and that he had large individual interests in lands and other properties in various states; that while the estate of Alfred was in process of settlement in the various jurisdictions, and while Louise was in confidence and trust relations with Charles and in reliance upon him, he procured fictitious claims to be put up against the estate of Alfred which operated to absorb and dissipate the interests of Louise and the daughter, Myra; that Louise was ignorant of the extent of the interests of Alfred; that Charles was in trust and fiduciary relations to Louise; and that under his influence and the influence of his agents she was overreached and finally induced under circumstances of financial stress, for a consideration of $25,000, to release interests which according to the allegations of the bill were wholly out of proportion to the consideration of the releases which Louise executed.

The answer, in effect, denies many of the allegations, but makes no apt and emphatic denial of the allegations which indicate that Alfred's property rights were of much greater value than $25,000, and demands proofs in that respect. The answer sets up probate settlements in respect to Alfred's interests, also sets up the defense of laches, and that the will was not a forgery, and a strong argument is presented and a pretty effective one on the ground of laches.

The present hearing is upon the question whether there should be an accounting, and whether in connection with that there should be an examination of the books of Alfred and Charles as partners and the books of Charles, to the end that the actual value of the interests of Alfred may be known.

As a result of the present hearing, it is not proposed to deal with the question of the forgery of the will, or the question of laches, or with what may be said to be any of the ultimate questions of right. If the releases are valid, they, of course, operate as an extinguishment

of the individual interests of Louise as widow of Alfred and of the interests of Myra, to which Louise succeeded upon her death.

In view of the supposed releases, it would seem that the plaintiffs have not made out a case for an accounting. That would mean an extensive and expensive investigation, and one which ought not to be entered upon unless the plaintiffs have an interest in the estate and a right to have it, and whether they have a right to have it or not depends upon the validity of the releases. There is not enough in the record to justify an adjudication in respect to the validity of the releases.

[2, 3] The New Hampshire cases seem not to favor and do not treat as conclusive, settlements out of court between executors and the heirs of estates. This is upon the theory, it is understood, that the interests are in custodia legis, and that outside settlements should be subject to approval, upon proper examination, if any issue is raised about them, and as a consequence such settlements and releases are not as conclusive as settlements between individuals in respect to rights not in the custody of the law. Clarke, Adm'r, v. Clay, 31 N. H. 393, is among the cases which suggest this idea, and various phases of the proposition are discussed in Bean v. Bean, 33 N. H. 284, Twitchell v. Smith, 35 N. H. 51, Stark v. Gamble, 43 N H. 467, Flanders v. Lane, 54 N. H. 392, Woodman v. Rowe, 59 N. H. 454, Bartlett v. Fitz, 59 N. H. 504, Mudgett v. Melvin, 66 N. H. 403, 34 Atl. 158, and Langley v. Farmington, 66 N. H. 434, 27 Atl. 224, 49 Am. St. Rep. 624.

If, under ignorance in respect to the extent of the property rights of Alfred and through the influence of Charles, who purported to be the executor of the will of Alfred, and one upon whom she relied, Louise signed papers purporting to release her interests for a wholly inadequate consideration and one which did not at all correspond to her actual interests and rights, the discharge ought not to operate as an extinguishment of her rights. An inquiry in respect to whether the discharges were valid may possibly become a broad one. It would perhaps involve an inquiry as to her knowledge of her husband's business interests, as to her ability to appreciate and value them, as to the extent of her reliance upon Charles under the fiduciary and family relations, and as to various other considerations and situations.

Judge Mitchell, who testified in respect to the execution of the releases, said that he was requested to prepare such papers as would be proper and sufficient to evidence a complete settlement of matters between Charles and Louise growing out of the estate of Alfred. It has not been pointed out to me that Judge Mitchell was in any way connected with the fiduciary negotiations leading up to the alleged settlement. His part was that of a lawyer to draw the papers. There was a pretty sharp issue between him and Louise as to what occurred at the time of the execution of the papers; but it is quite unnecessary to go into that, because, if there is anything in the transaction which entitles the widow, Louise, to relief, it is something which has reference to the relations of the parties and earlier conditions of trust and reliance, and something about which Judge Mitchell does not pretend to have any knowledge whatever.

[1] The conclusion is that the plaintiffs have not made out on this hearing a case which would justify common-law discovery and accounting, and this is so because the releases and the probate adjustments stand in the way, but, in view of the sweeping allegations of the bill as to the large property interests of Alfred, of ignorance, trust, confidence, and reliance on the part of Louise, none of which are aptly denied by the answer, it seems important to know whether the widow, Louise, released large interests for a wholly inadequate consideration. If, under conditions of family trust and reliance, she was induced for $25,000 to agree to execute a release of her interests in an estate which was worth hundreds of thousands and perhaps millions of dollars, it would be a release which ought not to stand.

The allegations of the bill are that Charles, with whom Alfred was associated, left an estate of $5,000,000, and the general effect of the allegations is, and the argument is, that Alfred's interests were coextensive with those of Charles. If Alfred was a spendthrift, or a speculator, or if his interests were contingent, or involved in controversy, it can be shown, and, if the agreement of Louise was one fairly reached, it should stand. But, in view of the fiduciary relations, if the consideration of the releases was not approximately, measurably, or reasonably commensurate with the actual interests sought to be released and transferred from the widow to one in fiduciary relationship, then the releases should not stand however many probate settlements there may have been in jurisdictions where Louise was only represented by Charles, the beneficiary under the supposed releases. The fact of proper and reasonable proportion between the consideration of the releases and the actual interests of Alfred would be significant in support of the alleged validity of the releases, and the fact of palpable disproportion between the consideration of the releases and the actual interests of Alfred would have a material bearing upon the question of the reasonableness of the releases from one party to the other under fiduciary relations.

Under this view, I think there should be a master to hear evidence and determine the fact as to the approximate value of the individual and partnership estate of Alfred at the time of his death and also at the time of the alleged releases.

A hearing before a master in respect to such questions may or may not involve an examination of the books and papers of Charles. That is something that can be determined later.

The parties may agree upon a master, or I will appoint one.